IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

MELONY O. S.[1],

      **Plaintiff,**

v.

      Civil Action 1:22-cv-424
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Melony O.S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court for on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 8). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I. BACKGROUND**

Plaintiff protectively filed her application for benefits on January 27, 2020, alleging that she has been disabled since April 19, 2019, due to a recent break of the ball of her femur with surgery, a titanium rod from her knee to hip with residual issues, serious Dupuytren's contracture

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

in right hand and left, carpal tunnel syndrome, bursititis, problems with her left knee and foot, depression, and anxiety. (R. at 127-28, 146.) Plaintiff's application was denied initially in August 2020 and upon reconsideration in December 2020. (R. at 50-65.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 79-80.) Administrative law judge Thuy-Anh T. Nguyen (the "ALJ") held a telephone hearing on April 6, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 29-49.) A vocational expert ("VE") also appeared and testified. (*Id.*) On May 26, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-28.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-8.)

II. **RELEVANT RECORD EVIDENCE**

The Court thoroughly has reviewed the information set forth in the Administrative Record in this matter. Given Plaintiff's claimed errors, rather than summarizing that information at any length here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

III. **ADMINISTRATIVE DECISION**

On May 26, 2021, the ALJ issued her decision. (R. at 12-28.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2024. (R. at 17.) Then, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 19, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: status-post fracture and open reduction fixation (ORIF) of the left femur and Dupuytren's contractures. (*Id.*) The ALJ determined that Plaintiff's medically determinable mental impairments variably diagnosed as mood disorder, anxiety disorder, bipolar disorder, alcohol use disorder, and marijuana use, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore non-severe. (R. at 18.) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is further limited to occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds; occasionally balancing and stooping but never kneeling, crouching, or crawling; frequently operating foot pedals with the left lower extremity; frequently handling, fingering, and feeling with the bilateral upper extremities; and avoiding all exposure to unprotected heights, moving machinery, and commercial driving.

(R. at 21.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff is capable of performing her past relevant work as a data coordinator and security guard. This work does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 23-24.) She therefore concluded that Plaintiff has not been disabled since April 19, 2019. (R. at 24.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.  ANALYSIS**

Plaintiff raises three issues in her Statement of Errors. First, Plaintiff contends that the ALJ erred by failing to find any severe mental health impairment at Step Two of the sequential evaluation and by failing to include any mental health limitation in the RFC determination. Further, Plaintiff argues that the ALJ failed to properly evaluate the opinion evidence and prior administrative findings for supportability as required by 20 C.F.R. § 404.1520c. Finally, Plaintiff argues that the ALJ erred by failing to consider why Plaintiff did not comply with treatment as required by SSR 16-3p. (ECF Nos. 9 and 12). For the reasons discussed below,

Plaintiff's argument that the ALJ did not properly consider the issue of supportability is well taken.[3]

Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim

---

[3] This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Court need not, and does not, address the alternative bases that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.*

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. §

7

404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that backdrop, the ALJ discussed opinions of the state agency physicians as they relate to both Plaintiff's physical and mental impairments. With respect Plaintiff's physical abilities, Plaintiff challenges the ALJ's analysis as set forth in the following discussion:

> In June 2020, Dr. Hinzman, a state agency medical consultant, opined that [Plaintiff] retained the physical ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 2 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally balance, stoop, or climb ramps and stairs; never kneel, crouch, crawl, climb ladders, ropes or scaffolds; and avoid all exposure to hazardous machinery, heights, or commercial driving (Exhibit 2A). Dr. Obiaghanwa, also a state agency consultant, reviewed additional evidence and affirmed Dr. Hinzman' prior assessment (Exhibit 4A). The state agency consultants' opinions are persuasive, as they are generally supported, but are only somewhat consistent with the other medical evidence of record. Specifically, while the record shows a lack of treatment notes or clinically documented symptomatology for a period of more than 12 months following the corrective procedures for the hand or the leg, giving [Plaintiff] the benefit of the doubt, she is further limited to frequently operating foot pedals with the left lower extremity, and frequently handling, fingering, and feeling with the bilateral upper extremities.

(R. at 23.)

With respect to Plaintiff's mental limitations, Plaintiff challenges the following analysis:

> In August 2020, Dr. Haskins, a psychologist and state agency consultant, opined that [Plaintiff]'s mental impairments were not severe (Exhibit 2A). Dr. Seleshi, also a psychologist and state agency consultant, considered additional evidence and affirmed Dr. Haskins' prior assessment (Exhibit 4A). The state agency consultants' opinions are persuasive, as they are generally supported and consistent with the other medical evidence of record. Specifically, [Plaintiff] has not participated in more than conservative mental health treatment since the alleged onset date, other than light therapy. In addition, she specifically rejected medication management, and the serial mental status examinations repeatedly note normal presentation, including a generally normal consultative examination.

(R. at 19.)

These excerpts confirm that the ALJ failed to discuss the supportability of these opinions. That is to say, the ALJ did not discuss these medical source's references to "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel*, 2021 WL 1697919, at *7 n.6. Indeed, a reader with no previous knowledge of Plaintiff's record would have no information regarding how these medical sources reached the conclusions which the ALJ found to be "persuasive" because the ALJ did not discuss the critical objective medical evidence underlying their opinions as required. *Id.* Despite the duty to discuss whether the analyses of the state agency physical and psychological consultants' objective medical findings supported their opinions, the ALJ failed to do so.

The Commissioner does not seriously dispute this contention, asserting instead that the ALJ "found the prior administrative findings generally supported." (ECF No. 11 at 9.) In the Commissioner's view, "the Court is not limited to reading only the ALJ's decision, [so] the ALJ was not required to restate the reasons provided by the state agency medical consultants." (*Id*.) This argument effectively amounts to a concession. Moreover, "the 'Court's role is not to search the record for such evidence and articulate a rationale for one outcome or the other.'" *Huffman v. Saul*, No. 5:19-CV-449-CHB, 2020 WL 6937441, at *5 (E.D. Ky. Nov. 24, 2020) (quoting *Willette v. Comm'r of Soc. Sec.*, No. 14-11637, 2015 WL 5559833, at *11 (E.D. Mich. Aug. 24, 2015), *adopted by*, No. 14-11637, 2015 WL 5545718 (E.D. Mich. Sept. 18, 2015)). "Instead, 'the Court is limited to reviewing the ALJ's rationale' as explained in his decision, [] not 'post-hoc rationalizations'' made by the Commissioner on appeal that "offer substantive factual and legal determinations that the ALJ never made.'" *Id.* Here, however, the Commissioner does not

9

even offer meaningful post hoc rationalizations. That is, even if the Court were at liberty to consider such rationalizations, the Commissioner also fails to provide any indication as to how the ALJ analyzed the internal supportability of the stage agency medical consultants' opinions. Absent the ALJ's discussion of the extent to which these consultants' observations supported their opinions, the Court cannot trace the path of the ALJ's reasoning. *See Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 7, 2022), *report and recommendation adopted*, No. 2:21-CV-5111, 2022 WL 1211427 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's ... unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning."); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks and citation omitted).

Beyond this, the Commissioner asserts that "Plaintiff's argument has no basis in the regulations." (ECF No. 11 at 9.) This conclusory assertion does nothing to rebut Plaintiff's argument that, under the applicable regulations, the ALJ had a duty to discuss the supportability factor when determining the persuasiveness of state agency physicians' opinions. To be clear, the relevant regulation reads as follows:

> **The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider** when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, **we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision**. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as

> appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2) (emphasis added).

For the ALJ to have adequately discussed the supportability of these opinions, the ALJ needed to evaluate what the consultants stated they had based their opinions on – not simply how their opinions compared to the record evidence as a whole. Indeed, that discussion only goes to the consistency of the opinions. *See Reusel*, 2021 WL 1697919, at *7 n.6 (discussing that an adequate "supportability" discussion "evaluat[ed] what [the doctor] said he based his opinion on," while a "consistency" discussion "compared the opinion to the evidence as a whole"). Thus, the ALJ simply did not undertake a supportability analysis and remand is required. *Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence. . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c.").

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 9) is **SUSTAINED.** The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:    May 2, 2023                                */s/ Elizabeth A. Preston Deavers*
                                                                                           **ELIZABETH A. PRESTON DEAVERS**
                                                                                          **UNITED STATES MAGISTRATE JUDGE**